UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CRAIG HINES, : | |
|     Plaintiff, : | |
| : | PRISONER CASE NO. |
| v. : | 3:12-cv-1453 (JCH) |
| : | |
| VALLETTA, et al., : | OCTOBER 29, 2013 |
|     Defendants. : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 28)**

**I.     INTRODUCTION**

The plaintiff, Craig Hines ("Hines"), brings this civil rights action against the remaining defendant, Dr. Valletta, for deliberate indifference to serious medical needs. Dr. Valletta has filed a Motion for Summary Judgment on the ground that Hines cannot prove that he was deliberately indifferent to Hines' medical needs. Defendant's Motion for Summary Judgment ("Def.'s Mot. for Summ. J.") (Doc. No. 28). For the reasons that follow, Dr. Valletta's Motion is granted.

**II.    STANDARD OF REVIEW**

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted). Once the moving party meets this

burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). Merely verifying the allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment. Zigmund v. Foster, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought. Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009). If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate. Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004). However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment. Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).

### III. FACTS[1]

---

[1] The facts are taken from Dr. Valletta's Local Rule 56(a) Statement and the exhibits submitted in support of and in opposition to the motion for summary judgment. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. See D. Conn. L. Civ. R. 56(a)2 & 56(a)3.

Hines is currently an unsentenced inmate incarcerated at the Bridgeport Correctional Center. He was serving a federal sentence for possession of narcotics with intent to distribute; possession, use and carrying of a firearm during, in relation to, or in furtherance of a drug offense; and being a felon in possession of a firearm prior to his transfer to state custody in January 2012 to face murder charges. When he was transferred to Connecticut, the Bureau of Prisons sent a summary of Hines' health. He had been diagnosed as suffering from chronic neck pain, chronic inflammation of the esophagus, chronic esophageal reflux, and schizophrenia. Hines has been prescribed Prilosec and Sucralfate for esophageal reflux.

Dr. Valletta is a medical doctor employed by the University of Connecticut Health Center. He has been assigned to Garner Correctional Institution ("Garner") in Newtown, Connecticut, since January 2012. Hines was housed at Garner during the following periods: March 13, 2012 through May 1, 2012; May 30, 2012 through November 7, 2012; January 15, 2013 through March 11, 2013; and August 15, 2013 through August 27, 2013.

On March 13, 2012, correctional officials became concerned about the status of Hines' mental health and transferred him to Garner. That same day, Hines told a nurse

---

Despite receiving notice of his obligation to respond to the Motion for Summary Judgment and the contents of a proper response, see Defendant's Motion for Summary Judgment (Doc. No. 28) at Exh. 3 (Notice to Pro Se Litigant), Hines has not provided a Local Rule 56(a)1 Statement with his response to the Motion for Summary Judgment. Accordingly, Dr. Valletta's facts are deemed admitted. See D. Conn. L. Civ. R. Civ. P. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2.").

that he had been bitten by a bat three months earlier, while in federal custody. Hines stated that he had flushed the bat down the toilet. Hines told the nurse that his throat was closing up and he experienced pain around his navel and on his side and stated that he required examination by an ear, nose and throat ("ENT") specialist. The nurse noted that Hines was standing near the cell door during this conversation and displaying no signs of acute distress.

On March 13, 2012, Dr. Valletta prescribed a three-month course of Zantac to treat Hines' esophageal reflux symptoms. Hines was also examined by a psychiatrist. He told the psychiatrist that he claimed to have suicidal thoughts to get transferred. Hines described the bat bite and associated symptoms. The psychiatrist concluded that Hines was not at risk of self-harm but was unsure whether Hines was malingering or exhibiting signs of a delusional disorder. Hines was regularly treated by mental health staff while confined at Garner.

Dr. Valletta examined Hines on March 16, 2012. Hines told Dr. Valletta about the bat bite and complained of a chronic cough and occasional green sputum. Hines denied symptoms of upper-respiratory infection, post-nasal drip, fever or chills. He appeared to have acid reflux symptoms. Acid reflux is generally treated with over-the-counter medications and is not considered life-threatening. Hines complained of a chronic cough but denied any genito-urinary, musculo-skeletal or neurological symptoms. Dr. Valletta examined Hines' head, ears, nose and throat and found them normal. Hines' neck, respiratory system, cardiovascular system, gastrointestinal system, neurologic system and extremities also were normal. Dr. Valletta determined

that Hines might suffer from allergies, acid reflux, and/or possible delusions. In addition to Zantac, Dr. Valletta prescribed Nasalide for six months to treat Hines' allergies and possibly resolve his other symptoms.

Dr. Valletta examined Hines again on March 28, 2012. Hines complained about muscle spasms, abdominal pain, a sore throat, and a cough. Dr. Valletta believed that Hines suffered from post-nasal drip probably associated with his allergies. He continued to believe that Hines suffered from acid reflux and possible delusions. Hines' blood tests were normal. Hines' Creatine level was slightly elevated but was not cause for concern. Dr. Valletta reordered tests to monitor Hines' Creatine level.

When Dr. Valletta saw Hines on April 5, 2012, Hines complained of muscle spasms, a sore throat, and cough. Hines opined that he had contracted rabies from the bat bite. Dr. Valletta thought Hines was displaying paranoia or delusions or exhibiting malingering behavior. Dr. Valletta spoke to Hines at length about rabies and explained that Hines' symptoms were inconsistent with rabies. On April 10, 2012, Dr. Valletta learned that Hines had been refusing his prescribed medications. As a result, Dr. Valletta discontinued the prescriptions.

On April 11, 2012, Dr. Valletta explained to Hines that all of his lab results were unremarkable and that he was not exhibiting symptoms of rabies. He explained that rabies can lie dormant in the body but would cause no symptoms if dormant. Once a person displays actual symptoms of rabies, the person becomes severely ill and dies within weeks. Thus, Dr. Valletta told Hines that it would be impossible for him to suffer rabies symptoms for multiple months as he claimed.

Hines again requested an ENT consult. Dr. Valletta submitted a request to the Utilization Review Committee ("URC") for an ENT consult to address Hines' problems swallowing. The URC denied the request. On April 24, 2012, Dr. Valletta again examined Hines for complaints of painful swallowing, neck pain, abdominal pain, and shortness of breath. The physical exam was normal. Dr. Valletta told Hines that the URC had denied his request for an ENT consult. As Hines had refused to take prescribed medications, Dr. Valletta decided to monitor him clinically.

In May 2012, Hines was transferred to MacDougall Correctional Institution ("MacDougall"). Dr. Pillai, the doctor treating Hines at MacDougall, noted normal examinations and similar test results to those at Garner. Dr. Pillai requested a cervical spine x-ray to determine whether Hines suffered arthritis of the spine or any neck pathology. The x-ray revealed minimal arthritis in the cervical spine. Dr. Pillai also submitted a URC request for an ENT consult. The URC denied the request, but it approved a barium swallow to examine Hines' upper gastrointestinal tract.

On May 30, 2012, Hines returned to Garner. An infectious disease serology was negative and a Thyroid test was normal. The barium swallow showed that Hines had small gastroesophageal reflux, which could explain some of his symptoms.

Dr. Valletta examined Hines on July 23, 2012, in response to complaints of cough with sputum, back pain and stiffness, ear pain, and abdominal pain. Dr. Valletta thought Hines could be showing signs of malingering behavior or delusional disorder because all examinations and lab results since January 2012 were normal.

On August 14, 2012, Dr. Valletta spoke with Hines about his concern that he had

rabies. Hines reported that, when he coughed, some of his brain matter came out and that he constantly had to clear mucous in his throat. Dr. Valletta asked Hines to sign a release to enable Dr. Valletta to review his medical records from before he entered the custody of the Department of Correction. Hines refused. Hines told Dr. Valletta that someone had sent him information on rabies, and he claimed to suffer from hydrophobia, a possible symptom of rabies. Hines stated that the rabies virus was affecting his central nervous system and had entered his body through a hole in his throat. This differed from Hines' earlier explanation that he had contracted rabies through the bat bite. Dr. Valletta noted that Hines' behavior could be attributed to malingering. Dr. Valletta ordered tests of Hines' sputum to detect the presence of bacteria. The tests were normal.

In November 2012, Hines was confined at the Hartford Correctional Center. Hines complained about a cold and cough. He was given cough medicine. A throat culture revealed the presence of Streptococcus Group-B. Hines was prescribed penicillin which resolved his symptoms.

Hines returned to Garner in January 2013. Dr. Valletta treated him on January 31, 2013, for complaints of a sore throat and a feeling that something was stuck in the back of his throat when he swallowed. The physical exam was normal. Dr. Valletta prescribed Prilosec to treat acid reflux and ordered extensive blood tests. The tests were normal except for abnormally high liver tests. The tests showed that Hines did not, however, have hepatitis. Dr. Valletta ordered a follow-up test in two weeks.

On February 11, 2013, a nurse saw Hines for complaints of throat pain. The

nurse referred Hines to a doctor.  The doctor saw Hines on February 19, 2013.  Hines reported that his medications were working well and did not mention any side effects or the supposed bat bite.

On March 13, 2013, Hines was transferred to New Haven Correctional Center.  Hines complained of chest pain and a noise when he opened his mouth.  The doctor prescribed an inhaler to treat respiratory problems.  On March 15, 2013, Hines complained that he was in too much pain to walk.  Dr. O'Halloran, the infectious disease specialist, noted that Hines had a history of somatic, delusional, and malingering behavior.  Dr. O'Halloran was aware of Hines' contention that he had contracted rabies but recommended no action.

On March 19, 2013, Hines asked that his mental health medication be discontinued.  Hines claimed that the medication, Loxapine, was causing the left side of his body to lock up.  The doctor agreed to discontinue the medication as long as Hines' behavior was in control.  Hines requested Seroquel to "knock [himself] out."  The doctor continued the prescription for Paxil, a drug used to treat depression, anxiety, and post-traumatic stress disorder.

On May 7, 2013, Hines complained of spinal pain, difficulty swallowing and a noise when he opened his mouth.  A physical examination was normal.  The doctor observed Hines clicking his tongue when he opened his mouth and concluded that Hines was demonstrating malingering behavior.

Later in the month, Hines was transferred to MacDougall.  Dr. Naqvi examined Hines in response to a complaint of a sore throat.  Dr. Naqvi diagnosed inflammation

and prescribed Amoxicillin and Tylenol.  In July 2013, Dr. Naqvi examined Hines for various throat problems.  Dr. Naqvi noted a mild palatal tremor and opined that Hines was suffering from Globus Hystericus, a psychological condition where the individual has a persistent feeling of a lump in his throat despite the lack of signs of a lump on physical examination.  Dr. Naqvi also noted that Hines had multiple mental health issues and was constantly requesting an ENT consult.

Palatal myoclonus is a rare condition that presents as a tremor in the back of the roof of the mouth.  It sometimes can cause a click when the individual opens his mouth.  The condition is commonly found to be annoying; it does not cause pain.  Palatal myoclonus can be caused by stress or anxiety.  To determine whether Hines suffers from palatal myoclonus, Dr. Naqvi submitted a URC request for an ENT consult.  He noted that as an alternative, Hines could be prescribed clonazepam or valproic acid because the drugs alleviate stress and anxiety, the possible causes of the condition.  The URC approved an ENT appointment, scheduled for September 2013.

After reviewing Hines' medical records, Drs. Valletta and Naqvi opine that Hines has received proper medical treatment since he entered Department of Correction custody in January 2012.

## IV.    DISCUSSION

Dr. Valletta argues that Hines cannot prevail on his claims of negligence or deliberate indifference to a serious medical need.  Def.'s Mot. for Summ. J. at Exh. 1, at 2.  Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Estelle

v. Gamble, 429 U.S. 97, 104 (1976); see also Harrison v. Barkley, 219 F.3d 132, 136-37 (2d Cir. 2000).  To state such a claim, the plaintiff must allege facts demonstrating sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  Estelle, 429 U.S. at 104-06.

Because mere negligence will not support a section 1983 claim, not all lapses in prison medical care constitute a constitutional violation.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003); Estelle, 429 U.S. at 105-06.  In addition, inmates are not entitled to the medical treatment of their choice.  See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986).  Mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment.  "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).  The conduct complained of must "shock the conscience" or constitute a "barbarous act."  McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citation omitted); see also U.S. ex. rel. Hyde v. McGinnis, 429 F.2d 864, 866 (2d Cir. 1970).  In addition, the fact that a prison official did not alleviate a significant risk that he should have, but did not, perceive does not constitute deliberate indifference.  See Farmer v. Brennan, 511 U.S. 825, 838 (1994).

There are both subjective and objective components to the deliberate indifference standard.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  Objectively, the alleged

deprivation must be "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991). A medical condition is serious if "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Harrison, 219 F.3d at 136 (citation omitted). The condition must produce death, degeneration, or extreme pain. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006).

Hines commenced this action seeking an ENT consult because such examination had not been approved by the Federal Bureau of Prisons. The URC has approved an ENT consult which was to have been conducted by this date. Thus, the request for ENT consult is moot. See Order Finding as Moot Motion for Medical Exam (Doc. No. 23).

Hines also argues that he suffers from rabies or other pathology transmitted by bats. While rabies is a "serious medical condition," Hines has provided no objective evidence that he actually has rabies, or even that he was bitten by a bat while in federal custody. He refuses to accept Dr. Valletta's explanation that once a person exhibits rabies symptoms, he dies within weeks and his medical opinion that it is impossible for Hines to have experienced rabies symptoms for years.

During the time he has been in state custody, Hines has received treatment for his medical complaints. He has received numerous blood tests, throat cultures, infectious disease tests, x-rays, and a barium swallow and, when the tests have shown

any abnormality, he has been treated. He has been prescribed medication which he refused to take. He has also refused to allow Dr. Valletta access to his medical records from federal custody.

The fact that Dr. Valletta disagrees with Hines' self-diagnosis is not actionable. See Chance, 143 F.3d at 703. Hines fails to present evidence showing that Dr. Valletta was aware that Hines would suffer serious harm as a result of his actions. The court concludes that no reasonable jury, on the record before this court, could find that Dr. Valletta's actions shock the conscience. Accordingly, Dr. Valletta's Motion for Summary Judgment is granted.

## V. CONCLUSION

Dr. Valletta's Motion for Summary Judgment (Doc. No. 28) is **GRANTED**. The Clerk is directed to enter judgment and close this case.

**SO ORDERED.**

Dated this 29th day of October 2013, at New Haven, Connecticut.

        /s/ Janet C. Hall
        Janet C. Hall
        United States District Judge